UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

IN RE:

TERRI GAY HUDSON,

Case No. GK 09-07105
Chapter 7

Debtor.

_____/

THOMAS R. TIBBLE,

Plaintiff,

Adv. Proc. No. 10-80005

v.

WELLS FARGO BANK, N.A., successor in
interest to WELLS FARGO HOME
MORTGAGE, INC.,

Defendant.

_____/

## OPINION REGARDING TRUSTEE'S ACTION TO AVOID MORTGAGE

Appearances:

Nicholas J. Daly, Esq., Kalamazoo, Michigan, attorney for Thomas R. Tibble, Plaintiff-
    Trustee.
Wendy K. Walker-Dyes, Esq., South Bend, Indiana, attorney for Defendant Wells Fargo
    Bank, N.A.

## I. INTRODUCTION

Terri Gay Hudson (the "Debtor") owns real property in Plainwell, Michigan. Wells

Fargo Bank, N.A. (the "Bank") claims to hold a valid mortgage on the real property. The

Bank's problem is that the property description in the mortgage contains the wrong legal

description. The Debtor owns Lot 5 of the platted property; the Bank's mortgage covers

Lot 6 of the platted property.

This chapter 7 bankruptcy case was filed on June 12, 2009 and Thomas R. Tibble was subsequently appointed as the "Trustee." He argues that the misdescribed property in the mortgage is fatal. Any interest that the Bank may have in the Debtor's real property is asserted to be invalid *or* subordinate to the Trustee's interest as a bona fide purchaser of real property from the Debtor (sometimes referred to as "BFP" or "BFP status") under 11 U.S.C. § 544(a)(3).[1]

## II. JURISDICTION

This court has jurisdiction over the bankruptcy case in which this adversary proceeding has been filed. 28 U.S.C.§ 1334. This bankruptcy case and all related proceedings have been referred to this court for decision. 28 U.S.C.§ 157(a); LBR 83.2(a) (W.D. Mich.). This is a core proceeding and this court may enter a final order.[2] 28 U.S.C.§ 157(b)(2)(K) (determination of validity, extent or priority of liens).

## III. ISSUES

Is the Bank's asserted mortgage on "Lot 5" invalid because the legal description pertains to platted property and is erroneously stated to be "Lot 6?" If the Bank's mortgage may be valid, may the Trustee avoid the mortgage under § 544(a)(3) of the Bankruptcy Code? Finally, given a recent Supreme Court decision, is this Article I bankruptcy judge constitutionally authorized to enter a final order in this mortgage avoidance adversary proceeding?

---

[1] References to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 inclusive, shall be cited as "§ ___."

[2] The authorization to render a final order is further discussed in Part V. below.

2

## IV. FACTS

A.  *Allegan County Register of Deeds:  Recorded Interests for Various Lots.*

The Debtor, Terri Gay Hudson, filed her voluntary chapter 7 case on June 12, 2009.  Prior to the filing, the Debtor was also legally known as Terri G. Gates and Terri G. Gonzalez.  The real property involved in this adversary proceeding is located in Watson Estates, Gun Plain Township, Allegan County, Michigan.  The Watson Estates plat (the "Plat") was dedicated and then recorded on June 18, 1968.  (Exh. C.)  There are twenty-three lots in the Plat.  (Id.)  The three lots addressed by the Bank and the Trustee are all located in the Plat on Dorothy Street, and referred to as "Lot 4," "Lot 5" and "Lot 6."  The Lots' respective permanent parcel numbers are 0308-540-004-00 (Exh. D), 0308-540-005-00 (Exh. B), and 0308-540-006-00 (Exh. A).  The Lots' respective commonly known street numbers are 383 Dorothy Street (Exh. D), 381 Dorothy (Exh. B), and 377 Dorothy Drive (Exh. A), Plainwell, Michigan.

1.  *Lot 4.*

On May 29, 2008, by a Warranty Deed recorded on May 30, 2008, Richard Tobin, as personal representative of a probate estate, conveyed Lot 4 to the Debtor. (Exh. D.)  Based upon various real estate index searches,[3] the Debtor owns Lot 4 and there is no mortgage on that lot.  (Exhs. L, M, N, O, P, Q and R.)

2.  *Lot 5.*

On March 4, 2002, Eugene and Dorothy Watson, by Warranty Deed recorded on March 27, 2002, conveyed Lot 5 to the Debtor and her former husband, Mario Benjamin

---

[3] All real estate searches are based upon the Register of Deeds for Allegan County, Michigan.  That Register of Deeds maintains both a tract index and a grantor-grantee index.

3

Gonzalez-Gomez. (Exh. B.) On April 30, 2002, the Debtor and her former husband granted a mortgage to Wells Fargo Home Mortgage, Inc., which was recorded on May 15, 2002. (Exh. E.)

On February 4, 2004, Wells Fargo Home Mortgage, Inc. executed a Mortgage Release, Satisfaction, and Discharge ("Mortgage Discharge") regarding Lot 5. (Exh. F.) That Mortgage Discharge was recorded on February 8, 2004. (Id.)

On October 21, 2005, a Judgment of Divorce, pertaining to the Debtor and her former husband, was filed in Allegan County. (Exh. J.) In the divorce judgment, the Debtor was awarded all right, title and interest to Lot 5. The judgment permitted a certified copy of it to be filed with the Allegan County Register of Deeds. (Id.) The judgment was filed. It appears in the Lot 5 tract index (Exh. K.) and in various grantor-grantee indices (Exhs. M, Q, and R). The recorded divorce judgment also states that the Debtor's name was legally changed to Terry Gay Hudson. (Exh. J at 5.)

Based upon the Lot 5 tract index, the Bank's May, 2002 mortgage appears on the record. (Exh. K.) There is no line item entry which discloses that the Mortgage Discharge (Exh. F) was recorded in the tract index. (Exh. K.) However, the grantor-grantee index discloses the Lot 5 Mortgage Discharge of the Bank's 2002 mortgage. (Exhs. M, Q and R.)

Examining the Allegan County Register of Deeds' tract index and grantor-grantee index in tandem discloses that the Debtor owns Lot 5 and the Bank has no mortgage on Lot 5. Also, the Debtor's bankruptcy filing is disclosed as a matter of record. (Exhs. K and P.)

4

3.    Lot 6.

The tract index of Lot 6 discloses that Lot 6 is owned by Sally J. Cook. Per the tract index, there are eight mortgages of record, including the mortgage granted by the Debtor to the Bank on Lot 6. (Exhs. L and G.) The grantor-grantee index likewise shows that the Debtor granted the Bank a mortgage on Lot 6. (Exhs. M, N and O.)

B.    The Bank's Mortgage.

The mortgage executed by the Debtor and recorded by the Bank is, politely stated, extremely careless. (Exh. G.) There are cross-outs and penned-in insertions. Scattered in the mortgage are inconsistent permanent parcel numbers and common street addresses that do not match. However, one portion of the mortgage is crystal clear -- the attached legal description, Exhibit "A," on the last page, describes the mortgaged property thusly:

> "LOT 6, WATSON ESTATES, AS RECORDED IN LIBER 10
> OF PLATS, PAGE 48."

Exhibit A also states the permanent parcel number, i.e. 0308-540-006-00, which matches the Lot 6 permanent parcel number.

C.    Evidence at the Trial.

No witnesses testified. The parties relied upon joint exhibits and other writings, including stipulated facts. Almost all of the facts are based upon the information contained in the exhibits.

It is noteworthy that the Bank argued that the Trustee has the obligation to make an inquiry about the Bank's erroneous mortgage on Lot 6. However, no witness testified (nor was there other evidence admitted) to establish (1) why a BFP should know that the Bank's Lot 6 mortgage was really on Lot 5, (2) to whom a BFP should

5

have addressed inquiries, (3) *how* a BFP should have made inquiries, e.g., by picking up the phone, writing a letter, or by other means, and (4) *what* information, if any, a BFP would have discovered to establish that the Bank's mortgage was on Lot 5, rather than on Lot 6.[4]  The court finds the Bank failed to establish any proof regarding its argument that a BFP would have, after inquiries were made, constructive notice that the Bank's mortgage was really on Lot 5 rather than on Lot 6.

## V. DISCUSSION

Section 544(a) of the Bankruptcy Code states in part:

> *The trustee* shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or *may avoid any transfer of property of the debtor* or any obligation incurred by the debtor *that is voidable by*—
>
> . . .
>
> (3) *a bona fide purchaser of real property*, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3) (emphasis supplied).

A trustee "is entitled to avoid [a] mortgage under Section 544(a)(3) if a hypothetical bona fide purchaser would be able to avoid the mortgage." Simon v.

---

[4] In one of its legal memoranda, the Bank argues that the Trustee had, or should have had, constructive notice of the Bank's asserted mortgage on Lot 5; therefore, it is argued that the Trustee should have made "further inquiries concerning the possible rights of another in real estate." Defendant's Supplemental Legal Memorandum at 2 and 5. What facts exist, other than ambiguity in the common address and two different permanent parcel numbers buried within the mortgage on Lot 6, is left for possible speculation.

6

Chase Manhattan Bank (In re Zaptocky), 250 F.3d 1020, 1024 (6th Cir. 2001).   Stated differently, a trustee "is considered a bona fide purchaser of the Debtor's property and may therefore avoid certain obligations placed on the property that are voidable under state law."   Rogan v. American General Home Equity, Inc. (In re Brockman), ___ B.R. ___, 2011 WL 2420239, *2 (Bankr. 6th Cir. June 17, 2011) (citing Rogan v. Bank One, N.A. (In re Cook), 457 F.3d 561, 566 (6th Cir. 2006)).   Whether BFP status exists or not is determined by reference to state law.   Select Portfolio Servs., Inc. v. Burden (In re Trujillo), 378 B.R. 526, 531-32 (Bankr. 6th Cir. 2007).   Michigan law determines whether the Bank's asserted interest in the Debtor's real property, Lot 5, is superior to the Trustee's interest.

In Michigan, a bona fide purchaser of real property is put on constructive notice of a prior interest in property by the existence of a mortgage in the records of the appropriate county register of deeds.   MICH. COMP. LAWS ANN. § 565.29.   "Michigan's recording act provides that a conveyance of real estate 'which shall not be recorded as provided in this chapter, shall be void as against any subsequent purchaser in good faith . . . whose conveyance shall be first duly recorded.'"   Wells Fargo Home Mortg., Inc. v. Richardson (In re Brandt), 434 B.R. 493, 496 (W.D. Mich. 2010) (Bell, J.) (citing MICH. COMP. LAWS ANN. § 565.29).

> A subsequent purchaser in good faith and for valuable consideration, or what is known as a bona fide purchaser for value, is a person who purchases or acquires some interest in real estate for valuable consideration in good faith, without notice that some third party claims a right to or an interest in it.  A bona fide purchaser takes the property free from, and not subject to, the right or interest of that third party.

7

John G. Cameron, Jr., MICHIGAN REAL PROPERTY LAW: PRINCIPLES AND COMMENTARY, § 11.20 at 395-96 (Inst. of Cont'g. Legal Educ., 3d ed. 2005) (herein "Cameron") (citing First of America Bank v. Alt, 848 F.Supp. 1343, 1347 (W.D. Mich. 1993)).

The Trustee argues that the Bank cannot have a valid mortgage on Lot 5. "With regard to platted property, Michigan law is absolutely clear -- all recorded sales, conveyances or mortgages *must* contain the caption of the plat and the lot number." Richardson v. Wells Fargo Home Mortg. Co. (In re Brandt), 421 B.R. 426, 429 (Bankr. W.D. Mich. 2009) (citing MICH. COMP. LAWS ANN. § 560.255) (emphasis in original), aff'd., 434 B.R. 493 (W.D. Mich. 2010).  In the Brandt appellate decision, it is stated:

> Wells Fargo argues that the LDA [the Land Division Act] merely stands for the proposition that, when property has been platted, it should no longer be described by its old metes and bounds description.  The act is not written that way, however.  It states that a plat "*shall be* described by the caption of the plat and lot number for *all purposes*," including conveyances.  Mich. Comp. Laws § 560.255 (emphasis added).  The LDA as a whole is focused on the use of plats as a means of describing and regulating rights in real property.  It does not merely eliminate the use of metes and bounds descriptions of property.  After property has been divided according to plats, and after those plats have been recorded with the register of deeds, referring to the property according to the platted boundaries in all future transactions serves the obvious purposes of maintaining the division of property rights according to those boundaries, and of maintaining clarity of rights to each parcel of the plat, both for public regulatory bodies and for third parties.  Thus, reference in a conveyance to a street address or tax identification number is invalid for the same reason that reference to a metes and bounds description is invalid:  it is not the "accurate legal description" intended by the LDA.

In re Brandt, 434 B.R. at 498 (emphasis in original).

This is *not* an instance when the Bank's mortgage "may not be recorded by the register of deeds" because the plat was not referenced on the legal description; the

8

mortgage on Lot 6 is eligible for recording and it was recorded. In re Brandt, 434 B.R. at 499 (discussing the requirement that a mortgage refer to the plat under MICH. COMP. LAWS ANN. § 560.212). The recording of the Bank's mortgage on Lot 6 is *not* void and therefore it may provide constructive notice to a subsequent purchaser. Id. (citing Grand Rapids Nat'l Bank v. Ford, 143 Mich. 402, 107 N.W. 76, 78 (1906) ("The purpose of the recording law is that the true state of the title be represented. If the grantee in a conveyance complies with the terms of the [recording] statute, he is protected.")).

The court notes that "[i]f a recorded document is not in compliance with law or was not entitled to be recorded, the record is a nullity and is 'entirely inoperative' to provide notice." In re Brandt, 434 B.R. at 501 (citing Lynch v. Murphy, 161 U.S. 247, 16 S.Ct. 523 (1896); Brown v. King, 172 Mich. 355, 137 N.W. 729, 731 (1912); Loomis v. Brush, 36 Mich. 40 (1877); and Hall v. Redson, 10 Mich. 21 (1862)). Further, a highly-respected commentator has stated "an instrument that is not recorded in accordance with the Michigan recording acts, either because it was recorded (including indexing) improperly or because it was not entitled to be recorded, may not constitute constructive notice to anyone." Cameron, § 11.24 at 399 (citing Galpin v. Abbott, 6 Mich. 17 (1858)).

Although it is somewhat unclear, the Trustee seems to argue that because the Land Division Act has not been adequately complied with, the Bank's recorded mortgage on Lot 6 may not be "eligible for recording." See Plaintiff's Brief in Reply to Defendant's Response to Motion for Summary Judgment at 1-2.[5] The court disagrees. The Bank's mortgage on Lot 6 contained both the plat and a lot number. It was eligible for recording. Therefore, the mortgage is *not* prevented from providing constructive

---

[5] The parties agreed that their respective memoranda submitted for the prior summary judgment argument could be considered at the subsequent trial.

9

notice of the Bank's claimed interest in Lot 6.  But what about Lot 5?  Does the Bank's mortgage on Lot 6 provide constructive notice to a BFP regarding an asserted interest in Lot 5?

Generally, a conveyance and the contents of a conveyancing instrument, such as a mortgage (MICH. COMP. LAWS ANN. § 565.35), provide constructive notice to the public, including subsequent purchasers.  Cameron, § 11.24 at 400.  However, an important limitation exists: "conveyances and their contents not in the chain of title of a bona fide purchaser for value [here the Trustee under § 544(a)(3)] are not notice to the purchaser."  Id. (citing Meacham v. Blaess, 141 Mich. 258, 104 N.W. 579 (1905)).  Applying this legal principle, the Bank's mortgage on Lot 6, not being in the chain of title for Lot 5, provides no notice to a BFP on Lot 5.[6]

This court has previously decided an adversary proceeding involving similar facts.  Moyer v. Edlund (In re Vandenbosch), 405 B.R. 253 (Bankr. W.D. Mich. 2009).  In Vandenbosch, the defendant-transferees conceded that the mortgage granted by the debtor was recorded against the wrong property.  (Rather than covering the real property upon which the residence was located, the mortgage encumbered an adjacent vacant lot.)  In Vandenbosch, the court stated "no amount of inquiry into the [p]roperty's chain of title would have revealed the [defendants'] mortgage because the [defendants'] mortgage had a different legal description."  Vandenbosch, 405 B.R. at 264-65.

---

[6] A purchaser of Lot 6 would be on constructive notice, and therefore required to make further reasonable inquiries; but that duty is irrelevant to this adversary proceeding which involves the rights in Lot 5.

10

Similarly to the <u>Vandenbosch</u> result,[7] the Trustee, as a BFP, was not given constructive notice of the Bank's asserted mortgage on Lot 5, where the mortgage was granted on Lot 6 and appears in the Lot 6 chain of title.

The Bank has no one to blame but itself. "Interestingly, the person presenting an instrument for recording must bear the burden of making sure that it is properly recorded, not the register of deeds to whom it is presented. The person presenting the instrument bears the risk of any clerical errors." Cameron, § 11.24 at 401. The Bank argues that the recorded mortgage contains references to the common address and the permanent parcel number of Lot 5 within the body of the Lot 6 mortgage even though the legal description in Exhibit A unambiguously refers to "Lot 6." To the extent the Bank intended to record the mortgage in the Register of Deeds' indices[8] pertaining to

---

[7] The same result has been reached under Iowa law. <u>Hanrahan v. Univ. of Iowa Cmty. Credit Union (In re Thomas)</u>, 387 B.R. 4 (Bankr. N.D. Iowa 2008) (legal description on mortgage covered wrong parcel of property; the description failed to provide constructive notice to third parties).

[8] Michigan law requires that "the instruments recorded in each county must be indexed." Cameron, § 11.13 at 386 (citing MICH. COMP. LAWS ANN. § 565.28). The grantor-grantee index shows the chain of title regarding a particular parcel of property. <u>Id</u>. (citing <u>Edwards v. McKernan</u>, 55 Mich. 520, 22 N.W. 20 (1885)). Although not required, a county may also maintain a tract index. <u>Id</u>. (citing MICH. COMP. LAWS ANN. § 53.144-.151; <u>Thomas v. Bd. of Supervisors</u>, 214 Mich. 72, 182 N.W. 417 (1921)). Allegan County maintains both indices.

The Bank argues that the grantor-grantee index is the "official" index in Michigan and implicitly asserts that the tract index carries lesser weight or does not really matter. <u>United States v. Grossman</u>, 501 F.3d 846, 850 (7th Cir. 2007) ("We construe the Michigan statutes together to mean that an interest must be recorded within the chain of title, in the grantor-grantee index, to have priority over a bona fide purchaser"). In <u>Grossman</u>, that county only maintained a grantor-grantee index; there was no tract index. <u>Id</u>. This court need not address the Bank's argument. The facts in this adversary proceeding demonstrate that the Allegan County Register of Deeds' grantor-grantee index and the tract index are consistent. *Neither* of the indices disclose that the

Lot 5, it was the Bank's responsibility to ascertain that a recording regarding Lot 5 actually occurred.

The Bank's final argument is that selected language contained in the mortgage on Lot 6, coupled with the grantor-grantee index, gives constructive notice and requires the Trustee, or any potential BFP, to make further inquiries.   With regard to what constitutes "notice" to determine whether a potential BFP is without notice of defects in a seller's title:

> Notice has been defined as whatever is sufficient to direct the attention of a purchaser of realty to prior rights or equities of third persons and to enable the purchaser to ascertain their nature by inquiry. Kastle v. Clemons, 330 Mich. 28, 46 N.W.2d 450 (1951).   In short, a buyer of property who has doubt as to the circumstances of the conveyance must ask questions.

Cameron, § 11.22 at 396.

Michigan's rule of inquiry is fairly clear:

> If [a party] has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries, and does not make, but on the contrary studiously avoids making such *obvious inquiries*, he must be taken to have notice of those facts, which, if he had used such *ordinary diligence*, he would readily have ascertained.

American Cedar & Lumber Co. v. Gustin, 236 Mich. 351, 360-61, 210 N.W. 300 (1926) (emphasis added); see Cameron, § 11.22 at 396-97 (citing other authorities which discuss the need to inquire).

The Bank asserts the Trustee, or any other potential BFP regarding Lot 5, should have examined the grantor-grantee index, and seen that Terri G. Gonzalez (Exh. M),

---

Bank has a mortgage on the Debtor's real property, Lot 5 or, the Debtor's other real property, Lot 4.

12

Terri G. Gomez (Exh. N), or Terri G. Gates (Exh. O), granted the Bank a mortgage on Lot 6. (Never mind that the Debtor's name is Terri Hudson and the grantor-grantee index, Exh. P, discloses no mortgage; apparently the name change should have been discovered by combing through the recorded divorce judgment and reading page 5 showing the name change of Terri Gonzalez to Terri Hudson, Exh. J.)   Then, presumably after finding the Gonzalezes' grant of mortgage to the Bank on Lot 6, the potential BFP would carefully read the Gonzalezes' mortgage on Lot 6 to the Bank in its entirety, rather than relying on the unambiguous "Exhibit A" legal description in the Lot 6 mortgage.   The purchaser would then see, buried in the Lot 6 mortgage, that there appeared to be an inconsistent permanent parcel number or common street address. This would then mandate that the potential BFP inquire of Terri Gonzalez (k/n/a Terri Hudson) or the Bank whether the Lot 6 mortgage was really on some other property, such as Lot 5. (If there exists such an inquiry obligation, the potential BFP would also need to inquire about Lot 4, which is also owned by the Debtor.)

The court rejects the Bank's convoluted argument for a number of reasons. First, anyone who is purchasing Lot 5 would examine the grantor-grantee index (and the tract index) to look for the conveyances regarding *Lot 5* -- not Lot 6, not Lot 4, or, for that matter, any of the other twenty lots in the Watson Plat. (See Exh. C.) The Bank's mortgage on Lot 6 is outside the Lot 5 chain of title.   Second, the title examination machinations urged by the Bank are far beyond any reasonable concept of "obvious inquiries" or "ordinary diligence." American Cedar, 236 Mich. at 360-61, 210 N.W. at 303.   Third, the Land Division Act in Michigan, while not barring the recordation of the Bank's mortgage on Lot 6, supports an interpretation that the lot stated in a recording

13

index is the correct lot. In re Brandt, 434 B.R. at 498 (the LDA "[maintains] clarity of rights to each parcel of the plat . . . reference in a conveyance to a street address or tax identification number is invalid . . . it is not the 'accurate legal description' intended by the LDA"). Given the LDA and its policy, it is inappropriate for a court to extend the requirement for inquiry notice beyond the plat and lot number actually contained in the legal description. Fourth, even assuming the Bank's argument is correct (a very big assumption indeed), the Bank has failed to elicit or introduce any evidence regarding what the inquiry notice would have disclosed. The court declines to speculate or invent facts that might favor the Bank.

Any asserted mortgage interest that the Bank may have in Lot 5 is avoidable by the Trustee under § 544(a)(3). The Bank's interest in Lot 5, whatever it may be, is automatically preserved for the benefit of the bankruptcy estate. § 551. The Trustee may administer the Lot 5 real property free and clear of any asserted lien by the Bank.

In a recent case, the Supreme Court determined that a bankruptcy judge is constitutionally prohibited from entering a final order in a certain type of core proceeding. Stern v. Marshall, ___ U.S. ___, 131 S.Ct. 2594 (2011). In Stern, the issue before the Court was, absent explicit consent by the parties, whether a bankruptcy court is constitutionally empowered to render a final judgment regarding a counterclaim by the bankruptcy estate against a person who filed a claim against the estate. 28 U.S.C. § 157(b)(2)(C) (a counterclaim by the estate is a "core proceeding"); 28 U.S.C. § 157(b)(1) (bankruptcy judges may hear and determine core proceedings, and enter final orders subject to the parties' rights to appeal).

14

The Court decided that, although a bankruptcy judge is *statutorily* empowered to enter a final order in a state counterclaim litigation, an Article I bankruptcy judge is *constitutionally* prohibited from entering a final order. As summarized by Chief Justice Roberts:

> We conclude today that Congress, *in one isolated respect*, exceeded that limitation in the Bankruptcy Act of 1984. The Bankruptcy Court below lacked the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim.

Stern v. Marshall, ___ U.S. at ___, 131 S.Ct. at 2620 (emphasis added).

Except for the types of counterclaims addressed in Stern v. Marshall, a bankruptcy judge remains empowered to enter final orders in all core proceedings. 28 U.S.C. § 157(b)(1) (adversary proceedings "arising under title 11" or "arising in a case under title 11" that have been referred to the bankruptcy judges in a district are to be determined by entry of a bankruptcy judge's final order). Cf. Moyer v. Bank of America, N.A. (In re Rosenberger), 400 B.R. 569, 572-74 (Bankr. W.D. Mich. 2008) (court discusses the meaning of and distinction between "arising in a case under title 11" and "arising under title 11").

This adversary proceeding, even though it requires reviewing, discussing and deciding state law issues, pertains to the determination of the validity, extent, or priority of the Bank's asserted mortgage lien in Lot 5. Regardless of the state law issues, this adversary proceeding "arises under" § 544(a)(3) of the Bankruptcy Code. Cf. In re Salander O'Reilly Galleries, ___ B.R. ___, 2011 WL 2837494 (Bankr. S.D.N.Y. July 18, 2011) (the Supreme Court has *not* ruled that a bankruptcy court is unable to render a final order that relies upon state law in a matter directly related to the bankruptcy). This

15

judge cannot envision a core proceeding that is more "core" than lien avoidance. The court will enter a final order.[9] If this court's order is appealed, and the district court decides this court is not constitutionally authorized to issue a final order in this adversary proceeding, this Opinion should be treated as a report and recommendation.

## VI. CONCLUSION

This court will enter a final order that the Bank's asserted mortgage on the Debtor's Lot 5 is avoidable under § 544(a)(3) and the Bank's mortgage lien, if any, is preserved for the estate, § 551.

A judgment shall be separately entered.

Honorable James D. Gregg
Chief United States Bankruptcy Judge

Dated this 16th day of
August, 2011
at Grand Rapids, Michigan

---

[9] The court anticipates that it will continue to enter final orders in adversary proceedings that "arise under" the Bankruptcy Code, e.g., preferential transfers under § 547.

16